George P. BAKER et al.

v.

SYSTEM FEDERATION NO. 1 et al.

INTERNATIONAL BROTHERHOOD ELECTRICAL WORKERS SYSTEM COUNCIL NO. 7 et al.

v.

NATIONAL RAILROAD PASSENGER CORPORATION

and

Penn Central Company.

Civ. A. Nos. 71–1326, 71–1342.

United States District Court, E. D. Pennsylvania.

June 18, 1971.

---

Joseph Smukler, Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., for plaintiffs.

Morris R. Brooke, Drinker, Biddle & Reath, Philadelphia, Pa., for National Railroad Passenger Corp.

Hermon M. Wells, Philadelphia, Pa., for Penn Central Co.

## OPINION AND ORDER

HAROLD K. WOOD, District Judge.

Presently before the Court are the motion of the Trustees of the Property of the Penn Central Transportation Company to transfer both of the above-captioned cases to the Reorganization Court and the motion of National Railroad Passenger Corporation (Amtrak) to dismiss in Civil Action No. 71–1342.

Civil Action No. 71–1326 was brought by the Penn Central Trustees to enjoin defendant unions from declaring a strike. Civil Action No. 71–1342 was brought by the International Brotherhood Electrical Workers System Council No. 7 and subsequent interveners to enjoin both Penn Central and Amtrak from discontinuing to honor employee passes providing for free transportation on the railroad. The background of the instant cases is as follows:

On October 30, 1970, Congress passed the National Railroad Passenger Corporation Act which authorized the formation of Amtrak. The Act also permitted railroads to enter into contracts with Amtrak whereby Amtrak will provide intercity passenger service previously provided by the various railroads.

Amtrak and Penn Central entered into such a contract which was approved by our colleague, the Honorable John P. Fullam on April 27, 1971. § 7.5 of the contract provided that Amtrak will determine transportation privileges. Rule 51 of the existing bargaining agreement between Penn Central and the Union provided:

"a. Employees will be allowed free transportation for themselves and dependent members of their families in accordance with the established practice of the company."

On May 13, 1971 Penn Central and Amtrak sent to the Union copies of Amtrak's Letter No. 10 which had on April 23 of this year announced the end of free transportation passes and provided for personal transportation by employees at one-half the regular rate. The May 13 letter announced that Penn Central passes would be honored on Amtrak trains through May 31 and thereafter would require payment of one-half the regular rate.

On May 24, 1971 and May 28, 1971, plaintiff unions notified Penn Central of its intention to strike on June 3, 1971 at 6:00 A.M. unless the said pass rights were restored and the provisions of Rule 51 of the collective bargaining agree-

ment complied with. Penn Central brought an action to enjoin the proposed strike and the International Brotherhood Electrical Workers System Council No. 7 brought the instant action to enjoin Amtrak and Penn Central from refusing to honor said passes. On June 2, 1971, our colleague, the Honorable Daniel H. Huyett granted temporary restraining orders restraining both the strike and the refusal to honor the passes. We extended the temporary restraining orders pending adjudication of this case.

On April 10, 1971, in an opinion filed pursuant to the Reorganization Court's Order No. 232, Judge Fullam stated:

"It is a matter of common knowledge that very many interested persons and governmental entities and agencies question the adequacy of inter-city passenger service proposed to be supplied by Railpax. It is not inconceivable that, if they were free to do so, large numbers of such persons, entities and groups might seek to litigate particular issues in a wide variety of forums. This would clearly hamper reorganization efforts, not only because of the burden of the litigation itself, but because of the prospect of inconsistent results (footnote). It is apparent, therefore, that, at least for the present, this Court should retain control over litigation involving the impact of the National Rail Passenger Service Act of 1970 upon the Debtor."

The instant litigation clearly involves the impact of the Act upon Penn Central Company as well as the very relationship between the Company and Amtrak. Consequently, it is precisely the kind of litigation referred to in Judge Fullam's opinion. As we believe, therefore, that the instant cases should be adjudicated by Judge Fullam, the Trustees' motion to transfer the case to the Reorganization Court will be granted.

The question remains, however, whether we should transfer the cases before acting upon Amtrak's motion to dismiss. Inasmuch as we have already held a hearing on Amtrak's motion and Amtrak opposes any transfer before an adjudication of its motion, we will decide the motion to dismiss.

Amtrak has now moved to dissolve the temporary restraining order issued against it and to dismiss the union's claim against it on the ground that no claim is stated upon which relief can be granted. For reasons hereinafter stated, we conclude that Amtrak's position is correct and that plaintiffs' complaint must be dismissed as to Amtrak.

Plaintiffs claim that Amtrak has violated § 405 of the National Railroad Passenger Service Act, 45 U.S.C. § 565, which states that the "railroad shall provide fair and equitable arrangements to protect the interests of employees affected by discontinuances of intercity rail passenger service." The Section then lists what equitable arrangements must be made. We find no violation of this provision of the Act. In the first instance, Section 405 applies to protection which must be afforded to railroad employees who work on certain intercity lines which have been discontinued. Consequently the provisions are not applicable to a situation such as this. Moreover, assuming arguendo that the provisions could apply to the facts of this case, the Section clearly puts the burden on the railroad and not Amtrak to make such arrangements for the affected employees. All that is required of Amtrak under the Section is that in any contract between it and a railroad, the terms and conditions of such protective arrangements must be specified and a certificate obtained from the Secretary of Labor to the effect that the labor protective provisions of the contract afford fair and equitable protection of its employees by the railroad. Amtrak has fully complied with these provisions.

It is clear to the Court that in the instant case any rights which the railroad employees have to free transportation exist only against Penn Central. These rights are based on Rule 51 of the collective bargaining agreement between

the union and Penn Central which as previously stated, provides that:

"a. Employees will be allowed free transportation for themselves and dependent members of their families in accordance with the established practice of the company."

The above provision, clearly basing the right to free transportation on the "established practice of *the company*" does not appear to us to be binding upon Amtrak who was, of course, not a party to the agreement.

Under the provisions of Amtrak's Letter No. 10 half rates, as opposed to free transportation, is to be provided to railroad employees riding on Amtrak trains whether on railroad or personal business. Exhibit T-4 presented pursuant to a hearing before Judge Fullam on April 20 of this year is a copy of the projected net cash benefits schedule contemplated because of the Amtrak-Penn Central contract. Under "Cash Burden Incurred By Railroad" is contained the yearly contemplated payment by the railroad for transportation for its employees who are engaged in railroad business on Amtrak trains. Therefore the railroad has determined that it is responsible for such payments. Implicit in such a determination, of course, is a determination that Amtrak acted validly in curtailing free transportation for those engaged in railroad business and compelling Penn Central to pay the difference. It would be anomalous, therefore, to find that while Amtrak acted validly as to employees on railroad business, it acted invalidly as to employees' personal transportation and that Amtrak and not Penn Central or the unions themselves must bear the cost of such transportation.

Finally we note that the contract between Amtrak and Penn Central was approved by Judge Fullam on April 27 of this year. Such approval obviously includes approval of § 7.5 which allows Amtrak to determine the question of free transportation. Pursuant to this provision of the contract, Amtrak determined that free passes would give way to half-fares. For us to find that Amtrak

acted invalidly would be to render a nullity this provision of the contract which has already been approved by the Reorganization Court.

Plaintiffs also allege that Amtrak has tortiously interfered with their rights under their collective bargaining agreement with Penn Central. On the contrary Amtrak has merely stated that any provisions for free transportation must be made by the railroad. We therefore see no merit to this contention.

Accordingly Amtrak's motion to dismiss will be granted.